GEORGE A. FARKAS
ATTORNEY AND COUNSELLOR AT LAW

*32 Court Street, Suite 408 - Brooklyn, N.Y. 11201*
718 625-2500
FAX 718 625-6837

*Via ECF*

July 7, 2011

Hon I. Leo Glasser, U.S.D.J.
United States District Court, E.D.N.Y.
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:    U.S. v. Frank Pontillo
                   11 CR 0030 and 08 CR 709

Dear Judge Glasser;

      It was an otherwise tranquil winter morning at about 6 a.m. on January 20, 2011 when several black SUV's, 2 unmarked minivans and other similarly ominous police vehicles converged upon Frank Pontillo's snow covered home. Approximately a dozen FBI agents sporting their signature blue jackets with yellow trim surrounded the house and sealed off the block. Then, a dozen members of the elite SWAT tactical team with their automatic weapons bristling and their body armor weighing heavily upon them, approached the entrance to the house. These elite forces were there to arrest Mr. Pontillo for agreeing to buy 6 television sets as well as other small electronics which he believed were stolen goods. The total value of the merchandise was less than $10,000.00

      In an operation worthy of an honorable mention next to the recent and well publicized Navy SEAL commando raid in Pakistan, the front door of the Pontillo home was blown off its hinges. Then, percussion grenades were tossed into the home, the resulting blast propelling a 4 pound puppy across the room into a wall.[1] The heavily armed agents then entered, dragged Mr. Pontillo barefoot out into the snow. Mercifully, before severe frostbite set in, he was eventually placed him under arrest for the aforementioned suspected crime.

      This sentencing memorandum is respectfully submitted in connection with the guilty plea before Your Honor addressing that offense as well as the Violation of Supervised Release encompassed therein.

---

[1] The little dog has not been the same since.

Hon l. Leo Glasser, U.S.D.J.
Re: U.S. v. Pontillo
Page 2

## **DISCUSSION**

Once again, because, as Oscar Wilde wrote, "*I can resist anything except temptation*", Frank Pontillo comes before this Court for sentencing after having committed a Level 8 non-violent offense. The Government, hopefully, will not contest the manner in which it enabled Frank Pontillo to commit the crime:

Frank's childhood friend Tommy McLaughlin, at the behest of the Government, approached him knowing that Frank was looking to buy television sets for a bar at which he worked and had hoped to make a living at. Equipped with a "wire", McLaughlin eventually got Frank to buy the television sets, along with some small electronics such *Wii* games, DVD player, camcorder, etc. In taped conversations with Frank, McLaughlin, as instructed by his handlers, made sure to explain to Frank that "*he and his friends had done something*" to get these items, a term Frank understood to mean that they were not obtained in a traditional lawful manner. These items, as well as others, were in fact, purchased by the FBI for the purpose of being sold by McLaughlin to Frank and others. Furthermore, since Frank resided in Staten Island, the Government made sure to instruct McLaughlin that it was important that Frank pick up the merchandise in New Jersey.[2]

The Government has stipulated to the value of all the goods being $ 9,182.94.00 Frank paid McLaughlin $5,800.00. The Government is in agreement that the net restitution amount after deducting for the above payment is $3,382.94.00. This sum will be paid immediately after sentence is imposed regardless of what Your Honor deems to be a just sentence.

Throughout the operation, Frank was under covert surveillance by Pre-Trial Services and the FBI. The Government knew where he was, who he was with, what he was doing, when he ate and when he slept. They also knew that during the lengthy period that he had been on Supervised Release, he was never armed, never threatened violence and had put his violent past behind him. The Frank Pontillo who stood before this Court on March 18, 1993 had ceased to exist a very long time ago.

Given the nature of the commando raid on his house as detailed above, one can only hope that the agents were also pretty sure that there were no small children in the residence as the grenades exploded and SWAT rushed in.

---

[2] Other defendants who made similar purchases from McLaughlin , and who lived in New Jersey, were told to pick up the merchandise in New York. After all, you can't have a Federal crime without crossing State lines.

## THE AGGRAVATING FACTOR

As strange as it may seem, the one overwhelming emotion that Frank Pontillo has exhibited is utter and profound shame to be standing before Your Honor for a third time to be sentenced. When he left the Courtroom on February 19, 2009, having seen that the Court exhibited mercy and understanding of the circumstances of that gambling violation, he had mixed emotions. He came into Court with a toothbrush, ready to go in. When he came out, he turned to me and said: *"Don't get me wrong George, you did a terrific job. But the fact is, you painted a bullseye on my back. They (the Government) are not going to let go of me."*

The shame he feels is two-fold: First, that he has proven himself to be a disappointment to Your Honor: Second, that because he was weak and just couldn't resist, he gave the Government the opportunity to get him.

## SENTENCE RECOMMENDATION

Notwithstanding the nature and circumstances of the instant offense that he has pleaded guilty to, advocating for a non-jail sentence in light of his past history would be an exercise of profound *chutzpah*.[3] He accepts responsibility and knows that the Government got him good. He expects to return to prison for his conduct. However, there is a very important matter that we respectfully urge upon the Court:

<u>WE BEG YOUR HONOR TO NOT IMPOSE SUPERVISED RELEASE!</u>

It is respectfully submitted that given the weakness exhibited by my client, coupled with his background and inability to shake his old acquaintances, he will end up with an intermittent life sentence if any supervised release is imposed. It is not hyperbole to suggest that he will serve a life sentence on an installment plan.

Ordinarily, the Court <u>must</u> impose a term of Supervised Release if the custody portion of the sentence is over 12 months. (Guideline 5D1.1(a)) As per Guideline 5D1.1(b) the Court <u>has the option</u> to impose a term of Supervised Release if the custody portion of the sentence is 12 months or less. (Emphasis supplied)

---

[3] Somehow, English words such as "gall" or "nerve" seem simply insufficient.

Hon I. Leo Glasser, U.S.D.J.
Re: U.S. v. Pontillo
Page 4

As per Application Note 1 of 5D1.1, the Court may downwardly depart and not impose supervised release if the Court finds that supervised release is not needed to:

- Protect public welfare
- Enforce a financial condition
- Provide for drug/alcohol testing or treatment
- Assist the reintegration of the defendant into the community
- Or to accomplish any other sentencing purpose.

We respectfully submit that in this case, none of the above factors merit the imposition of Supervised Release. As detailed below, the public welfare is protected by his Criminal History category. There is no financial condition to enforce and he has no need for drug/alcohol treatment. If anything, Supervised Release would hamper his reintegration into the community.

It is hoped that once Frank Pontillo completes whatever custody sentence that Your Honor imposes, he will walk out of prison unfettered by any further obligation other than to not commit crimes. The protection of society as a whole would arise from the fact that were he to commit even a minor offense, given his Criminal History, which, after this conviction is "off the charts", he would be sent away for a very long time. Of course the Government would have to prove him guilty of that new crime and would not have the added advantage of throwing in a Violation of Supervised Release based on some innocuous "association" charge.

## USC 18 § 3553

We briefly address some of the factors that the Court may consider pursuant to USC 3553(a).

1. <u>The nature and circumstances of the offense</u> – One wonders why, in this case, the Government would unleash a cooperator to set up an individual and afford him the opportunity to commit a crime. Many times there are good reasons, however none of those exist here. Frank Pontillo was under close surveillance for a lengthy period of time and the Government knew or should have known that his violent/dangerous past was history. As best as he could, he had put his past behind him and was trying to earn a legitimate living. When one examines the sole charge in this case coupled with the manner of the arrest, one simply is left to wonder, why?

Hon I. Leo Glasser, U.S.D.J.
Re: U.S. v. Pontillo
Page 5

<u>The history of the defendant</u> – This Court is more than familiar with the background of Frank Pontillo. And because of Your Honor's intimate knowledge of his background, the Court is in a unique position to understand and appreciate his present predicament.

If the sole criteria for the imposition of a sentence was to reflect the <u>seriousness of the offense</u>, we wouldn't be submitting a sentencing memorandum. The fact is that we are aware that other factors enter into consideration and must be weighed. Chief among them, I submit, is to "promote respect for the law".

On the surface it may well appear that Frank Pontillo has no <u>respect for the law</u>, given the number of times he has appeared before a Court. However, we respectfully urge the Court to look past the obvious. There is a world of difference between "venality" and "weakness". There is a huge gap between a criminal looking for ways to commit crimes and enrich himself and someone who is tempted and set up and doesn't have the strength to simply say "no".

It is that weakness that sums up Frank Pontillo and the reason why he faces prison.

The fact that he faces return to prison for this offense, is, in and of itself sufficient to afford <u>adequate deterrence to further criminal conduct</u>.

Furthermore, nothing in this case suggests that the <u>public needs to be protected</u> from Frank Pontillo.

## **CONCLUSION**

Based on the foregoing, we respectfully request that the Court fashion a sentence that addresses all the issues raised in this memorandum. We pray that the sentence in total is under 12 months for the offense as well as the Violation of Supervised Release that it encompasses. We further pray that the Court not impose any Post Release Supervision.

Respectfully submitted

GEORGE A. FARKAS
GF 1531

GAF:kjh

cc: A.U.S.A. Elizabeth Geddes
   via e-mail – elizabeth.geddes@usdoj.gov